**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>SiFi Networks America, LLC,[1]<br><br><br>                     Debtor. | Chapter 11<br><br>Case No. 26-10912 (BLS)<br><br>**Hearing Date: July 1, 2026, at 10:00 a.m. ET**<br>**Objection Deadline: June 24, 2026, at 4 p.m. ET**<br><br>**Re: D.I. 13** |

**UNITED STATES TRUSTEE'S LIMITED OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES, (II) SCHEDULING CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) APPROVING THE STALKING HORSE AGREEMENT, (V) APPROVING THE PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (VI) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (VII) AUTHORIZING THE DEBTOR'S ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (VIII) GRANTING RELATED RELIEF**

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), through his counsel, files this limited objection to the *Debtor's Motion for Entry of an Order (I) Approving the Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement, (V) Approving the Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (VI) Approving the Sale of Substantially All of the Debtor's Assets, (VII) Authorizing The Debtor's Assumption And Assignment Of Certain Executory Contracts and Unexpired Leases, and (VIII) Granting Related Relief* (D.I. 13) (the "Motion") and in support of that objection states:

---

[1] The Debtor in this chapter 11 case and the last four digits of its federal tax identification number are SiFi Networks America, LLC (7990). The Debtor's service address in this chapter 11 case is 103 Foulk Road, Suite 500, Wilmington, DE 19803.

**PRELIMINARY STATEMENT**

1.      The Debtor seeks approval of an expense reimbursement for the Debtor's proposed "stalking horse" bidder, ArcLink Fiber LLC (the "Stalking Horse"), which is an entity owned and controlled by the Debtor's pre-petition lender and their DIP lender (collectively, the "DIP Lender").  The DIP Lender is also an affiliate of the Debtor's parent, SNA, Ltd.  The Stalking Horse intends to make a credit bid of up to $4,603,039, representing the total pre-petition and post-petition amount allegedly owed.

2.      The Stalking Horse, if outbid at auction, is not entitled to the proposed $200,000 expense reimbursement (the "Expense Reimbursement"). An allowable Expense Reimbursement incentivizes a party which would not have an independent motivation to make a stalking horse bid to invest the time and money to do the due diligence necessary to make a stalking horse bid, to protect it from losing its due diligence investment by being outbid at the auction.  Here, the Stalking Horse is related to the Debtor's pre-petition lender which negotiated the terms of the DIP Credit Agreement prior to bankruptcy and is an affiliate of the Debtor's 100% owner, SiFi Networks America Ltd. ("SNA Ltd.").  Accordingly, the Stalking Horse did not need to undertake any additional due diligence to make a bid, did not need an incentive to make a bid, and will not need to be compensated if it is not the winning bidder at the auction.  The Stalking Horse is independently motivated to participate at the auction, to protect its asserted secured position in the Debtor's assets and equity interest in the Debtor.  There is nothing in the Bankruptcy Code which permits such a rich protection to a fully-interested (and invested) Stalking Horse.

3.      Because the Stalking Horse does not need an allowed administrative claim to incentivize the firm to make a bid, the Expense Reimbursement is not "actually necessary to

preserve the value of the estate," as required by Third Circuit law. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999).

4.    Second, the amount of the proposed Expense Reimbursement is excessive. If the Court allows an expense reimbursement, the cost should be capped at no more than $50,000, and the Stalking Horse should be required to provide support for claimed expenses to the Debtor, any appointed official unsecured creditors committee, and the U.S. Trustee.

5.    Third, the U.S. Trustee objects to treating any expense reimbursement allowed by the Court as a superpriority administrative claim because there is no basis in the Bankruptcy Code for such treatment.

## JURISDICTION AND STANDING

6.    Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Motion and this limited objection.

7.    Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the U. S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U. S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

8.    Under 11 U.S.C. § 307, the U. S. Trustee has standing to be heard on the Motion and this limited objection.

**BACKGROUND**

9.      On June 5, 2026, (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

10.     The U.S. Trustee has not yet appointed an official committee of unsecured creditors in this case.

11.     On June 5, 2026, the Debtor filed the Motion. D.I. 13.  In the Motion, the Debtor identified the Stalking Horse and proposed that it be entitled to make a credit bid up to $4,603,039.  Mot. ¶ 20; Mot. Ex. 5 (Stalking Horse Agreement § 2.1(a)) [D.I. 13].  As of the Petition Date, the total pre-petition amount due to the DIP Lenders was $2.2 million.  DIP Financing Mot. ¶ 14 [D.I. 10].  In the Motion, the Debtor proposes the Expense Reimbursement of up to $200,000 as a bid protection for the Stalking Horse.  Mot. ¶ 20.  Under the terms of the DIP financing agreement, the DIP Lenders will loan the Debtor $3,130,000 in new money ($1,135,000 under the Interim DIP Order and an additional $1,995,000 under the Final DIP Order).  DIP Financing Mot. ¶ 23.  The Stalking Horse is "the Debtor's (i) DIP Lender and (ii) prepetition secured lender.  SNA Ltd. is the parent of the Debtor.  In April 2026, SNA Ltd. was acquired by PATRIZIA, a German infrastructure investment manager.  The Stalking Horse Bidder is an affiliate of PATRIZIA.  Bidding Procedures Mot., footnote 3, Ex. 1; Dinoff First Day Decl. ¶¶ 17, 19 [D.I. 11].  Under these circumstances, the Court should not approve the relief requested by the Debtor.

**ARGUMENT**

**A.     Stalking Horse Is Not Entitled to the Proposed Expense Reimbursement.**

12.     The U.S. Trustee objects to the Motion because the Expense Reimbursement is not justified under governing Third Circuit law.  The Stalking Horse is an entity controlled by the Debtor's pre-petition and post-petition secured lender and is related to Debtor's parent-owner.  The credit-bidding lender does not need to be incentivized to protect the secured claim.

13.     To award a break-up fee or expense reimbursement to a potential bidder, the Court must determine that the fee or expense was an actual and necessary cost and expense of preserving the estate.  *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999).   In *O'Brien*, the Third Circuit Court of Appeals held that "the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *Id.* at 535.

14.     The burden is on the moving party to prove that any proposed expense reimbursement may be allowed as an administrative expense.   In addition, although "the considerations that underlie the Debtor's judgment may be relevant to the bankruptcy court's determination on a request for break-up fees and expenses," "the business judgment rule should not be applied as such in the bankruptcy context." *Id.*

15.     Moreover, as recognized by the Third Circuit in *O'Brien*:

> [E]ven if the purpose for the break-up fee is not impermissible, the break-up fee may not be needed to effectuate that purpose.  For example, in some cases a potential purchaser *will bid whether or not break-up fees are offered* . . . .   In such cases, the award of a break-up fee cannot be characterized as necessary to preserve the value of the estate.

181 F.3d at 535 (emphasis added); *see In re Reliant Energy Channelview LP*, 200 F.3d 594 (3d Cir. 2010) (affirming disallowance of retroactive grant of break-up fee that was sought after the stalking horse bidder had already bid for the assets).

16.     As a secured lender owed more than $4.6 million, the Stalking Horse will bid whether or not the Reimbursement Expense Fee is offered to protect its secured claim.  Because the Stalking Horse did not need an incentive to protect the value of its collateral through the stalking horse bid, the Expense Reimbursement is not "actually necessary to preserve the value of the estate," as required under *O'Brien.*

17.     In the Motion, the Debtor does not establish that the Expense Reimbursement is necessary to preserve the value of the Debtor's estate and fails to provide any permissible justification for the bid protection.  Rather, the Motion merely states that the stalking horse bid protections are "a sound exercise of the Debtor's business judgment and are in the best interests of the Debtor, its estate, and all stakeholders." – which is not the governing standard under *O'Brien*.  Mot. ¶ 42.  Contrary to the Debtor's statement, the instant facts demonstrate that the opposite is true.  The Debtor are providing the Stalking Horse with an additional sweetener of up to $200,000 if another entity outbids the Stalking Horse.  Rather than promote a robust marketing of the Debtor' assets, the Expense Reimbursement (i) is not necessary to keep the Stalking Horse at the table and (ii) will chill interest in the Debtor's assets.  This is not a "sound exercise of business" judgment and does not benefit any stakeholder except the Stalking Horse.

B.     **The Amount of the Expense Reimbursement Is Excessive.**

18.     The proposed Expense Reimbursement in the amount of $200,000 is excessive, considering that the Stalking Horse had no need to undertake any significant due diligence to make a stalking horse bid.  The Stalking Horse's owners, as the DIP Lender and SNA, Ltd.'s

affiliate, had undoubtedly performed extensive due diligence when they agreed to provide the Debtor's pre-petition funding and, subsequently, the DIP financing facility. Simply put, all necessary diligence had been completed prior to the bankruptcy. Accordingly, if the Court allows an expense reimbursement, the cost should be capped at no more than $50,000. Further, the Stalking Horse should be required to provide support for claimed expenses to the Debtor, any appointed committee, and the U.S. Trustee.

**C.** **The Reimbursement Expense Is Not Entitled to Superpriority Treatment Under the Bankruptcy Code.**

19. Finally, to the extent that the Debtor is seeking to have the Expense Reimbursement treated as a superpriority administrative claim, such request should be denied. Even if the Court were to approve some portion of the Expense Reimbursement, there would be no basis under the Bankruptcy Code to have claims for such amounts allowed as a superpriority administrative claim.

20. The Third Circuit has ruled that break-up fees (or reimbursement expenses) must be sought and analyzed under Section 503(b). *See Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) ("[A] bidder must seek a break-up fee under 11 U.S.C. § 503(b)[.]" (citing *O'Brien*, 181 F.3d 527 (3d Cir. 1999))). The analysis of break-up fees under Section 503(b) "must be made in reference to *general administrative expense jurisprudence*." *O'Brien*, 181 F.3d at 535 (emphasis added). Further, the Court "do[es] not have the authority to 'create a right to recover from [a] bankruptcy estate where no such right exists under the Bankruptcy Code.' As a result, termination fees are subject to the same general standard used for all administrative expenses under 11 U.S.C. § 503[.]" *In re Energy Future Holdings Corp.*, 904 F.3d 298, 313 (3d Cir. 2018) (*petition for cert. filed*, --- U.S.L.W. ---- (U.S. Jan. 18, 2019) (No. 18-957) (quoting *O'Brien*, 181 F.3d at 535).

21.     Section 503(b) does not provide for superpriority status.   Such status is provided for only in Sections 364(c)(1) and 507(b) of the Code.  Those sections are addressed exclusively to claims of (a) entities providing post-petition financing and (b) pre-petition secured lenders for adequate protection for diminution in collateral value during the bankruptcy case.   Bid protections in connection with sales do not fall under either of the two aforementioned categories, and therefore the Expense Reimbursement cannot receive superpriority administrative claim status under the Bankruptcy Code.

22.     "The filing of a petition for bankruptcy protection under Chapter 11 of the Code … precludes all efforts to obtain or distribute property of the estate other than as provided by the Bankruptcy Code.  This statutory control over the right to recover property from the debtor's estate is integral to the purposes and goals of federal bankruptcy law." *O'Brien*, 181 F.3d at 532 (citations omitted).

23.     Permitting the Stalking Horse to prime other administrative expense claimants has no basis in the Bankruptcy Code, is inconsistent with Third Circuit precedent, and should not be permitted.

24.     The U.S. Trustee leaves the Debtor to its burden and reserves any and all rights to (i) amend or supplement this objection and (ii) conduct discovery.

**WHEREFORE,** the U.S. Trustee respectfully requests that this Court deny the Expense Reimbursement and award such other relief as this Court deems appropriate under the circumstances.

Dated:  June 12, 2026
        Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 & 9**

By:  */s/ Jonathan W. Lipshie*
Jonathan W. Lipshie
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
Tel: (202) 567-1124
Email: Jon.Lipshie@usdoj.gov

9