**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| SiFi Networks America, LLC, | Case No. 26-10912 (BLS) |
| Debtor.[1] | **Related to Docket Nos. 10, 52** |

**FINAL ORDER (I) AUTHORIZING THE DEBTOR TO (A) OBTAIN POSTPETITION FINANCING AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED NOTEHOLDER, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 10] (the "Motion")[2] of the above-referenced debtor, as debtor in possession (the "Debtor") in the above-captioned case (the "Case"), pursuant to sections 105, 361, 362, 363, 364, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§101-1532 (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-2 and 9013-1(m) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, among other things,

    a.    authorization for the Debtor, pursuant to sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, to (i) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), and all other Prepetition Collateral (as defined herein), solely in accordance with the terms of this final order (this "Final Order"), (ii) use the proceeds of the DIP Facility (as defined herein), solely in accordance with the terms of this Final Order, and (iii) provide adequate protection to the Prepetition Secured Noteholder (as defined herein);

---

[1]    The Debtor in this chapter 11 case and the last four digits of its federal tax identification number are SiFi Networks America, LLC (7990).  The Debtor's service address in this chapter 11 case is 103 Foulk Road, Suite 500, Wilmington, DE 19803.

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

b.    authorization for the Debtor to obtain postpetition financing on a secured superpriority basis, consisting of (i) a new money loan pursuant to a term promissory note (the "DIP Facility" and the loans thereunder, the "New Money DIP Loan") in an aggregate principal amount of $3,430,000.00, of which (x) $1,135,000.00 was made available to the Debtor upon entry of the Interim Order,[3] and (y) $2,295,000 shall be available to the Debtor upon entry of this Final Order and (ii) a roll-up, subject to paragraph 26 and which was effective upon entry of the Interim Order (the "Interim Roll-Up"), by the DIP Lender of the Prepetition Secured Indebtedness (as defined herein) equal to $1,135,000.00, *and* (iii) a roll-up subject to paragraph 26 and entry of this Final Order (the "Final Roll-Up," and together with the Interim Roll-Up, the "Roll-Up," and together with the New Money DIP Loan, the "DIP Loan"), by the DIP Lender of the Prepetition Secured Indebtedness (as defined herein) equal to $1,088,039.00 *plus* (a) accrued and unpaid interest under the Prepetition Secured Note Agreement (as defined herein), including accrued and unpaid postpetition interest at the non-default rate specified in the Prepetition Secured Note Agreement (as defined herein) from the Petition Date through and including the date that such obligations are rolled up, *plus* (b) any and all unreimbursed costs, fees and expenses of the Prepetition Secured Noteholder (as defined herein), in each case, pursuant to the terms and conditions set forth in this Final Order and that certain Debtor-in-Possession Delayed Draw Term Loan Promissory Note annexed as **Exhibit 1** to the Interim DIP Order (as may be amended, restated, supplemented, waived, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Note"), executed by the Debtor and ArcLink Fiber LLC (the "DIP Lender"), along with any other agreements, instruments, pledge agreements, guarantees, security agreements, intellectual property security agreements, control agreements, escrow agreements, instruments, notes, and documents executed in accordance and connection therewith; each as amended, restated, supplemented, waived, or otherwise modified from time to time in accordance with the terms hereof and thereof, and collectively with the DIP Note (the "DIP Note Documents");

c.    authorizing the Debtor to incur the principal, interest, costs, expenses, obligations (whether contingent or otherwise), and all other amounts (including, without limitation, all Obligations (as defined in the DIP Note)), as and when due and payable under and in accordance with each of the DIP Note Documents (collectively, the "DIP Obligations");

d.    authorizing the Debtor to execute, deliver, and perform under the DIP Note and all other DIP Note Documents, and to perform such other and further acts as may be

---

[3] "Interim Order" means the *Interim Order (I) Authorizing the Debtor to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Noteholder, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 52]

necessary or desirable in connection with the Interim Order, this Final Order, the DIP Note Documents, and the transactions contemplated thereby;

e.  granting to the DIP Lender, and authorizing the Debtor to incur, the DIP Liens (as defined herein), as applicable, in all DIP Collateral (as defined herein), subject to the Carve-Out (as defined herein), which DIP Liens shall have the priority set forth in this Final Order;

f.  granting to the DIP Lender, and authorizing the Debtor to incur, allowed superpriority administrative expense claims against the Debtor in respect of all DIP Obligations in accordance with and subject to the Carve-Out and the terms of this Final Order;

g.  authorizing the Debtor to grant the Prepetition Secured Noteholder, solely to the extent of any diminution in the value of, the Prepetition Collateral adequate protection in the form of: (i) Adequate Protection Liens (as defined herein), subject to any Permitted Prior Liens and (ii) Adequate Protection Superpriority Claims (as defined herein);

h.  modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order and the DIP Note Documents;

i.  waiving any applicable stay with respect to the effectiveness and enforceability of this Final Order (including a waiver pursuant to Bankruptcy Rules 6003(b) and 6004(h));

j.  a waiver of certain of the Debtor's and the estate's right to surcharge against the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code;

k.  for the "equities of the case" exception under section 552(b) of the Bankruptcy Code to not apply to such parties with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral or the DIP Collateral, as applicable;

and the Court having entered the Interim Order on June 9, 2026 after a hearing was held on June 9, 2026 (the "Interim Hearing"); and a final hearing (the "Final Hearing") having been held by the Court on July 8, 2026, and notice of the Motion and the relief sought therein having been given by the Debtor as set forth in the Interim Order and this Final Order; and the Court having considered the evidence adduced, and the statements of counsel at the Interim Hearing and the Final Hearing; and it appearing to the Court that granting the relief sought in the Motion on the terms and conditions herein contained is necessary and essential to enable the Debtor to preserve

the value of the Debtor's business and assets and that such relief is fair and reasonable and that entry of this Final Order is in the best interest of the Debtor and its estate and creditors; and due deliberation and good cause having been shown to grant the relief sought in the Motion,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.   **Petition Date.** On June 5, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware. The Debtor has continued with the management and operation of its business and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Case. On June 22, 2026, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors in this Case (the "Committee") [Docket No. 84].

B.   **Jurisdiction and Venue.** Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. § 157(b)(2). This Court has jurisdiction over the Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Venue for the Case and the proceeding on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.   **Prepetition Secured Note Agreement.** Prior to the Petition Date, the Prepetition Secured Noteholder (as defined below) made certain loans and advances pursuant to and in accordance with the terms and conditions of that certain Secured Promissory Term Note, dated as of May 6, 2026 (as heretofore amended, restated, or otherwise modified from time to time, the "Prepetition Secured Note Agreement," and together with all other documentation executed in connection therewith, the "Prepetition Secured Note Documents"), among SiFi Networks America, LLC, as the borrower (in such capacity, the "Prepetition Loan Party") and ArcLink Fiber LLC as the noteholder (in such capacity, the "Prepetition Secured Noteholder").

**D.      Debtor's Admissions With Respect to the Prepetition Secured Indebtedness.**

Subject only to the rights of parties in interest specifically set forth in paragraph 26 of this Final Order (and subject to the limitations thereon contained in such paragraph), in exchange for and as a material inducement for the Prepetition Secured Noteholder to agree to the relief sought herein, after consultation with its attorneys and financial advisors, the Debtor admits, stipulates, and agrees that:

    i.      As of the Petition Date, the Prepetition Loan Party was justly and lawfully indebted and liable, without defense, counterclaim, or offset of any kind, to the Prepetition Secured Noteholder in the aggregate principal amount of not less than $2,200,000.00 plus accrued but unpaid interest, fees, premiums, and other amounts (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, to the extent that they are chargeable or reimbursable under the Prepetition Secured Note Agreement), charges, indemnities and all other Obligations (as defined in the Prepetition Secured Note Agreement) incurred or accrued in connection therewith (whether arising before, on, or after the Petition Date) as provided in the Prepetition Secured Note Agreement (the "Prepetition Secured Indebtedness"). The Prepetition Secured Indebtedness includes any and all principal amounts owing or outstanding under the Prepetition Secured Note Agreement, interest on, fees and other costs, expenses, and charges owing in respect of, such amounts, and any and all obligations and liabilities, contingent or otherwise, outstanding thereunder. The Prepetition Secured Indebtedness, including the amounts specified in this paragraph, constitutes the legal, valid, and binding obligations of the Prepetition Loan Party, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), without objection, offset, defense, or counterclaim of any kind or nature to the Prepetition Secured Indebtedness. The Prepetition Loan Party does not have, nor shall it assert, any claim, counterclaim, setoff, or defense of any kind, nature, or description that would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Secured Indebtedness. The Prepetition Secured Indebtedness and any amounts previously paid to the Prepetition Secured Noteholder pursuant to the terms of the Prepetition Secured Note Agreement, on account thereof, or with respect thereto are not subject to avoidance, reduction, disallowance, impairment, recharacterization, or subordination pursuant to the Bankruptcy Code or any other applicable non-bankruptcy law, except as provided in the Prepetition Secured Note Documents or this Final Order.

**E.      Debtor's Admissions With Respect to Collateral and Liens.** Subject only to the rights of parties in interest specifically set forth in paragraph 26 of this Final Order (and subject to the limitations thereon contained in such paragraph), in exchange for and as a material inducement

for the Prepetition Secured Noteholder to agree to the relief sought herein, after consultation with

its attorneys and financial advisors, the Debtor admits, stipulates, and agrees that:

    i.    Pursuant to (i) Section 4 of the Prepetition Secured Note Agreement, and (ii) the UCC-1 financing statement filed May 6, 2026, the Prepetition Loan Party granted valid, continuing, binding, enforceable and perfected first priority liens on the Collateral (as defined in the Prepetition Secured Note Agreement, the "Prepetition Collateral") to and/or for the benefit of the Prepetition Secured Noteholder (the "Prepetition Liens"), as more fully set out in the Prepetition Secured Note Documents.

    ii.    The Prepetition Secured Note Documents are valid and binding agreements and obligations of the Prepetition Loan Party, and the Prepetition Liens constitute valid, binding, enforceable, and perfected first priority security interests and liens, which are not subject to avoidance, recharacterization, recovery, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or any other applicable non-bankruptcy law, except as provided in this Final Order.

**F.**    **Debtor's Admissions With Respect to Roll-Up.** The DIP Lender's willingness to

make the DIP Loan is conditioned upon the Prepetition Secured Indebtedness being rolled up

through the Roll-Up.

**G.**    **Debtor's Admissions With Respect to Cash Collateral.** Subject only to the rights

of parties in interest specifically set forth in paragraph 26 of this Final Order (and subject to the

limitations thereon contained in such paragraph), in exchange for and as a material inducement for

the Prepetition Secured Noteholder to agree to the relief sought herein, after consultation with its

attorneys and financial advisors, the Debtor admits, stipulates, and agrees that all of the Prepetition

Loan Party's cash, including all cash proceeds of the Prepetition Collateral, the Prepetition Loan

Party's banking, checking or other deposit accounts with financial institutions (in each case, other

than trust, escrow and custodial funds held as of the Petition Date) as of the Petition Date or

deposited into the Prepetition Loan Party's banking, checking or other deposit accounts with

financial institutions after the Petition Date that is property of the Prepetition Loan Party constitutes

Cash Collateral of the Prepetition Secured Noteholder within the meaning of section 363(a) of the

Bankruptcy Code. The Prepetition Secured Noteholder is entitled, pursuant to sections 105, 361, 362 and 363(e) of the Bankruptcy Code, to adequate protection of its interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in value of its interests in the Prepetition Collateral as of the Petition Date resulting from the use of Cash Collateral, the postpetition use, sale or lease of the Prepetition Collateral and/or the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code.

**H.     Debtor's Admissions With Respect to the DIP Facility and Use of Prepetition Collateral**. The DIP Facility and the use of Prepetition Collateral (including Cash Collateral) were negotiated in good faith and at arm's length among the Debtor and the DIP Lender (in its capacities as DIP Lender and Prepetition Secured Noteholder). The use of Prepetition Collateral (including Cash Collateral) and the credit to be extended under the DIP Facility were allowed, advanced, made, used, and/or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Lender (in its capacities as DIP Lender and Prepetition Secured Noteholder) is therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order. The DIP Lender did not control, direct, or otherwise influence the Debtor's decision to commence the Case or the Debtor's decision-making process with respect thereto, and the Debtor exercised its independent business judgment in determining to file the Case and to enter into the DIP Facility. For the avoidance of doubt, each of the admissions contained in this paragraph shall be subject to the rights of parties in interest specifically set forth in paragraph 26 of this Final Order (and subject to the limitations thereon contained in such paragraph).

**I.     Releases; Investigation.** Subject only to the rights of parties in interest specifically set forth in paragraph 26 of this Final Order (and subject to the limitations thereon contained in such paragraph), the Debtor hereby forever waives and releases any and all Claims (as defined in

section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights against the Prepetition Secured Noteholder (solely in its capacity as such) arising prior to the date of the entry of this Final Order, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law. Subject to paragraph 26 of this Final Order (and subject to the limitations thereon contained in such paragraph), the foregoing release shall be binding on the Debtor's estate, the Committee, all parties in interest, and any successor-in-interest to any Debtor or the Debtor's estate, including, but not limited to any chapter 7 or chapter 11 trustee or examiner.

**J.**      **Corporate Authority.** The Debtor has all requisite power and authority to execute and deliver the DIP Note Documents to which it is a party and to perform its obligations thereunder.

**K.**      **Need for Postpetition Financing and Use of Cash Collateral.** A need exists for the Debtor to use the Cash Collateral, consistent with the Approved Budget and this Final Order, for working capital purposes, to pay costs under the DIP Facility and this Final Order, for other general corporate purposes, and the satisfaction of costs and expenses of administering the Case. The ability of the Debtor to obtain liquidity through the use of the proceeds of the DIP Facility and the Cash Collateral is vital to the Debtor and its efforts to maximize the value of its assets. The terms of the proposed DIP Facility pursuant to the DIP Note Documents, the Interim DIP Order, and this Final Order are fair and reasonable, reflect the Debtor's exercise of its prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

**L.**      **No Credit Available on More Favorable Terms.** The Debtor and its advisors have solicited and contacted third-party lenders regarding the provision of postpetition financing and have been unable to obtain financing and other financial accommodations from sources other than the DIP Lender and no such third-party lender was willing to provide financing on terms  more

favorable than those provided under the DIP Facility and the DIP Note Documents. The Debtor has been unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Debtor also has been unable to obtain adequate credit for money borrowed (a) having priority over administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code or (b) secured only by a lien on property of the Debtor and its estate that is not otherwise subject to a lien. Postpetition financing is not otherwise available without granting the DIP Lender (subject to the Carve-Out) (a) the DIP Liens on all DIP Collateral, as set forth herein, (b) the DIP Superpriority Claims (as defined herein), and (c) the other protections set forth in the Interim Order and this Final Order. After considering all alternatives, the Debtor has properly concluded, in the exercise of its sound business judgment, that the DIP Facility represents the best financing available to it at this time, and is in the best interests of all of its stakeholders.

**M.      Roll-Up.** The Roll-Up shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the DIP Lender, to fund amounts and provide other consideration to the Debtor under the DIP Facility and not as payments under, adequate protection for, or otherwise on account of any of the Prepetition Secured Indebtedness. The Prepetition Secured Noteholder would not otherwise consent to the use of its Cash Collateral and would not (in its capacity as the DIP Lender) be willing to provide the DIP Facility or extend credit to the Debtor thereunder, without the inclusion of the Roll-Up, subject to paragraph 26. The Roll-Up of the Prepetition Secured Indebtedness into DIP Obligations will enable the Debtor to obtain the necessary financing to administer this Case to fund its operations and maximize value for all parties in interest.

**N.      Use of Proceeds of the DIP Facility and Cash Collateral.** The DIP Facility and the DIP Note Documents were negotiated in good faith and at arm's length between the Debtor and

the DIP Lender, with the Debtor and DIP Lender's respective independent advisors. The Debtor, after consultation with its independent advisors and a thorough evaluation of all reasonably available alternatives, has determined that it had no viable alternative source of financing or liquidity sufficient to fund its operations and preserve the value of its estate other than the DIP Facility. As a condition to entry into the DIP Note Documents, the extension of credit and other financial accommodations made under the DIP Facility and the consent to use Cash Collateral (including, without limitation, the proceeds of the DIP Facility), the Debtor and the DIP Lender have agreed that Cash Collateral, the proceeds of the DIP Facility, and all other cash or funds of the Debtor, shall be used solely in accordance with the terms and conditions of the Interim Order, this Final Order, the DIP Note Documents, and the Approved Budget (as defined below) (subject to permitted variances pursuant to paragraph 9 of this Final Order) as provided for hereunder and as follows:  (1) to provide ongoing operations and working capital for the Debtor and to pay budgeted expenses of the Debtor during the Case, (2) to provide for other general corporate purposes of the Debtor during the Case, (3) to pay transaction fees and expenses, (4) to pay the costs of administration of the Case, including prior to the delivery of a Carve-Out Trigger Notice (as defined below), to fund the Carve-Out (as defined below), and after the delivery of a Carve-Out Trigger Notice, to fund the aggregate amount of Allowed Professional Fees incurred prior to the delivery of the Carve-Out Trigger Notice plus the Post-Carve Out Trigger Notice Cap (as defined below), including, in each case, through deposits into the Professional Fee Reserve Account and (5) as otherwise contemplated in the Approved Budget or permitted by the DIP Lender, and for no other purpose.

O.      **Business Judgment and Good Faith Pursuant to Section 364(e).** Based on the Motion, the First Day Declaration, the El Attar Declaration, and the record presented to the Court at the Interim Hearing and Final Hearing, the (i) extension of credit and other financial

accommodations made under the DIP Facility and the DIP Note Documents, (ii) terms of the DIP Facility, (iii) amounts paid and to be paid thereunder, (iv) terms of adequate protection granted to the Prepetition Secured Noteholder, (v) terms on which the Debtor may continue to use Prepetition Collateral (including Cash Collateral), and (vi) Cash Collateral arrangements described therein and herein, in each case, pursuant to the Interim Order, this Final Order and the DIP Note Documents: (a) are fair, reasonable, and the best available to the Debtor under the circumstances; (b) reflect the Debtor's exercise of prudent business judgment; (c) are supported by reasonably equivalent value and fair consideration; and (d) represent the best financing available under the circumstances.

**P.      Notice.** Notice of the requested relief sought at the Final Hearing was provided by the Debtor to:  (i) the U.S. Trustee; (ii) the holders of the thirty (30) largest unsecured claims against the Debtor; (iii) counsel to the Prepetition Secured Noteholder and the DIP Lender; (iv) the Internal Revenue Service; (v) the United States Attorney's Office for the District of Delaware; (vi) the Securities and Exchange Commission; (vii) the Delaware Secretary of State; (viii) the Delaware State Treasury; (ix) the Committee; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002. Given the nature of the relief sought, the foregoing notice of the Final Hearing was, in the Debtor's good faith belief, the best available under the circumstances and complies with Bankruptcy Rules 2002, 4001(b) and (d) and 9014, section 102(1) of the Bankruptcy Code as required by sections 361, 363 and 364 of the Bankruptcy Code, and Local Rule 9013-1(m). No further notice of, or hearing on, the relief sought at the Final Hearing and the relief granted herein is necessary or required.

**Q.      Consent by Prepetition Secured Noteholder.** The Prepetition Secured Noteholder consents to the Prepetition Loan Party's use of Cash Collateral and the entry into the DIP Facility and the DIP Note Documents, solely in accordance with and subject to the terms and conditions provided for in this Final Order. Absent the DIP Facility, the Debtor would imminently exhaust all

available liquidity, suffer immediate and irreparable harm to its business operations and estate, and experience a significant destruction of value to the detriment of all stakeholders, including the Debtor's creditors and other parties in interest.

**NOW, THEREFORE, UPON THE RECORD OF THE PROCEEDINGS HERETOFORE HELD BEFORE THIS COURT WITH RESPECT TO THE MOTION, THE EVIDENCE ADDUCED AT THE FINAL HEARING, AND THE STATEMENTS OF COUNSEL THEREAT, IT IS HEREBY ORDERED THAT:**

1.      **Motion Granted.** The Motion is granted on a final basis in accordance with the terms of this Final Order. Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled and all reservations of rights included therein, are hereby denied and overruled with prejudice. This Final Order shall become effective immediately upon its entry.

2.      **Authorization of DIP Facility.**

(a)      Subject to the terms and conditions of this Final Order, the DIP Lender is hereby authorized to execute, enter into, and perform all obligations under the DIP Facility and the DIP Note Documents to which it is party. The DIP Note Documents and this Final Order govern the financial and credit accommodations to be provided to the Debtor by the DIP Lender in connection with the DIP Facility.

(b)      The Debtor is authorized to enter into the DIP Note Documents.

(c)      From and after entry of the Final Order, the Debtor is authorized to incur all of its DIP Obligations on account of such incurrence under the DIP Facility, up to an aggregate principal amount of $3,430,000.00 in New Money DIP Loans on a final basis (of which $1,135,000.00 was made available to the Debtor upon entry of the Interim Order), together with applicable interest, protective advances, expenses, and other charges payable in connection with

the DIP Facility and the Roll-Up, as applicable, in each case, subject to the terms and conditions set forth in this Final Order and the DIP Note Documents.

(d)        Without limiting the foregoing, and without the need for further approval of this Court, the Debtor is authorized to perform all acts to make, execute, and deliver all instruments and documents (including, without limitation, the execution or recordation of pledge and security agreements, mortgages or deeds of trust, and financing statements), and to pay all expenses that may be required, necessary, or desirable for the Debtor to implement the terms of, performance of its obligations under, or effectuate the purposes of and transactions contemplated by the Interim Order, this Final Order, the DIP Facility, and the DIP Note Documents (as applicable) in accordance herewith and therewith, including, without limitation:

(1)        the execution and delivery of, and performance under, the DIP Note Documents;

(2)        the execution and delivery of, and performance under, one or more amendments, waivers, consents, or other modifications to and under the DIP Note Documents, in each case, as the Debtor and the DIP Lender (in accordance with and subject to the terms of the applicable DIP Note Documents) may agree, it being understood that no further approval of the Court shall be required for non-material authorizations, amendments, waivers, consents, or other modifications to and under the DIP Note Documents (and any fees and other expenses (including any attorneys', accountants', appraisers', and financial advisors' fees), amounts, charges, costs, indemnities, and other obligations paid in accordance and connection therewith);

(3)        the non-refundable and irrevocable payment of any and all fees, costs, and expenses payable pursuant to the DIP Note Documents, including, without limitation, the reasonable and documented invoiced out-of-pocket fees, costs, and expenses as may be due from time to time of the DIP Lender, including, without limitation, the documented fees and expenses of Clifford Chance US LLP and Young Conaway Stargatt & Taylor, LLP pursuant to paragraph 33;

(4)        subject to the Carve-Out, the granting and perfection of the DIP Liens (as defined below), and the granting of the DIP Superpriority Claims (as defined below), in each case, as set forth herein and in the DIP Note Documents; and

(5)        the performance of all other acts necessary, required, or desirable to implement the DIP Facility and to facilitate the transactions contemplated by the DIP Note Documents, the Interim Order, and this Final Order in accordance therewith and herewith.

(e)    The DIP Lender shall not have any obligation or responsibility to monitor the Debtor's use of the DIP Facility, and the DIP Lender may rely upon the Debtor's representations that the amount of the DIP Facility requested at any time and the use thereof are in accordance with the requirements of the Interim Order, this Final Order, the DIP Note Documents, and Bankruptcy Rule 4001(c)(2).

3.    **DIP Obligations.** Subject only to the rights of parties in interest specifically set forth in paragraph 26 of this Final Order (and subject to the limitations thereon contained in such paragraph), the DIP Note Documents entered into pursuant to the Interim Order shall constitute valid, binding, enforceable, and non-avoidable obligations of the Debtor, and shall be fully enforceable against the Debtor, its estate, and any successors thereto, including, without limitation, any estate representative or trustee appointed in the Case, or in any other proceedings superseding or relating to any of the foregoing and/or upon the dismissal of the Case (collectively, the "Successor Cases"), and its creditors and other parties in interest, in each case, in accordance with the terms thereof, the Interim Order and this Final Order. The DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, now existing or hereafter arising, which may from time to time be or become owing by the Debtor to the DIP Lender, under, or secured by, and in accordance with, the DIP Note Documents, the Interim Order, or this Final Order, including all principal, interest, costs, expenses, and other amounts under the DIP Note Documents (including the Interim Order or this Final Order). Subject to paragraph 18 of this Final Order, the DIP Obligations shall be due and payable, without notice or demand, and, subject to the terms of this Final Order, the use of Cash Collateral shall automatically cease during the continuation of a DIP Termination Event (as defined herein) or the occurrence and continuance of any event or condition set forth in paragraph 18 of this Final Order. No obligation, payment, transfer, or grant of security under the DIP Note Documents, the Interim Order, or this Final Order

14

(including any DIP Obligations or DIP Liens) to the DIP Lender shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 362, 502(d), 544, 547-550 of the Bankruptcy Code, any applicable Uniform Voidable Transfer Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or other similar state statute or common law), or subject to any defense, reduction, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim, counterclaim, offset, or any other challenge under the Bankruptcy Code or any applicable law unless in accordance with paragraph 18 of this Final Order.

4.      **No Obligation to Extend Credit.** The DIP Lender shall have no obligation to make any loan or advance under the applicable DIP Note Documents unless all of the conditions precedent to the making of such extension of credit by the DIP Lender under the DIP Note Documents and this Final Order have been satisfied in full or waived in accordance with the terms of the DIP Note Documents.

5.      **DIP Collateral**. The term "DIP Collateral" shall include all assets and properties of the Debtor of any kind or nature whatsoever, whether tangible or intangible, real, personal or mixed, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, the Debtor, whether prior to or after the Petition Date, whether owned by or to, or leased from or to, the Debtor, and wherever located, including, without limitation, the Debtor's rights, title and interests in (i) all Prepetition Collateral, (ii) all "DIP Collateral" as defined in the DIP Note Documents, (iii)  actions brought under section 549 of the Bankruptcy Code to recover any postpetition transfer of DIP Collateral; (iv) the proceeds of any avoidance actions (such actions, "Avoidance Actions") brought pursuant to chapter 5 of the Bankruptcy Code or section 724(a) of the Bankruptcy Code or any other Avoidance Actions under the Bankruptcy Code or applicable state law or foreign law equivalents; and (v) all proceeds, products, offspring, and profits of each

of the foregoing and all accessions to, substitutions, and replacements for, each of the foregoing, including any and all proceeds of any insurance, indemnity, warranty, or guaranty payable to the Debtor from time to time with respect to any of the foregoing. Notwithstanding anything to the contrary herein or the Interim Order, the DIP Collateral shall not include: (i) any Avoidance Actions unrelated to go-forward business and the assets acquired pursuant to the Stalking Horse Agreement (as such term is defined in the Stalking Horse Agreement (as defined in the Bidding Procedures)); (ii) any claims and causes of actions against the Debtors' officers, directors, managers, insiders, or any other person or entities related thereto or affiliated therewith unrelated to the go-forward business and the assets acquired pursuant to the Stalking Horse Agreement; (iii) any accounts receivable or intercompany receivables that are due and owing to the Debtor; (iv) any tax refunds, VAT refunds, ERTC credits, or other tax credits due to the Debtor; (v) any assets that are rendered unencumbered as a result of a successful Challenge; and (vi) all proceeds, products, offspring, and profits recovered from the foregoing subclauses (i) through (vi) collectively the "Excluded Collateral").

6. **DIP Liens**.

(a) As security for the DIP Obligations, effective immediately upon the date of entry of the Interim Order, as set forth more fully in the Interim Order and this Final Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3) and 364(d), the DIP Lender is hereby granted (without the necessity of the execution by the Debtor or the filing or recordation of mortgages, security agreements, lockbox or control agreements, financing statements, or any other instruments or otherwise by the DIP Lender) on a final basis, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests (collectively, the "DIP Liens") in the DIP Collateral (as defined herein), as follows:

(1)     *Liens on Unencumbered Property*. Pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable, automatically, and fully perfected first priority liens on and security interests in all DIP Collateral that is not otherwise subject to any valid, enforceable, and non-avoidable liens on and security interests, subject and subordinate only to (a) the Permitted Prior Liens and (b) the Carve-Out;

(2)     *Priming DIP Liens*. Pursuant to section 364(d)(1) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable automatically and fully perfected first priority senior priming liens and security interests in all DIP Collateral, regardless of where located, which senior priming liens and security interests in favor of the DIP Lender shall be senior to the Prepetition Liens, subject and subordinate only to (a) Permitted Prior Liens (as defined below, solely to the extent such liens are expressly permitted to be senior to the respective DIP Liens under the DIP Note Documents) and (b) the Carve-Out. For the avoidance of doubt, as a result of the priming of the Prepetition Liens pursuant to the Interim Order and this Final Order, the DIP Lender shall have a first priority senior priming lien on all DIP Collateral, including but not limited to the Prepetition Collateral; and

(3)     *Liens Junior to Certain Other Liens*. Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable automatically and fully perfected liens in all DIP Collateral (other than as set forth in clauses (1) and (2)) junior only to the valid, enforceable and non-avoidable (i) prepetition liens (if any) which are senior to the Prepetition Secured Noteholder's liens or security interests as of the Petition Date, (ii) prepetition claims for set off and recoupment (if any) which are senior to the Prepetition Secured Noteholder's liens or security interests as of the Petition Date, and (iii) liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and that are senior to the Prepetition Secured Noteholder's liens or security interests as of the Petition Date and that are permitted under the Prepetition Secured Note Agreement (if any) (the liens and claims in clauses (i), (ii), and (iii) above respectively, the "Permitted Prior Liens").

(b)     Except as set forth in paragraph 6(a) of this Final Order, the DIP Liens (i) shall not be made subject to or *pari passu* with (A) any lien or security interest heretofore or hereinafter granted in the Case or any Successor Case, and shall be valid and enforceable against the Debtor, its estate, any trustee, or any other estate representative appointed or elected in the Case or any Successor Case and/or upon the dismissal of the Case or any Successor Case, (B) any lien that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the

Bankruptcy Code or otherwise, or (C) any intercompany or affiliate lien, and (ii) shall not be subject to sections 506(c), 510, 549, 550, or 551 of the Bankruptcy Code.

(c)  Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent, or the payment of any fees or obligations to, any governmental entity or non-governmental entity in order for the Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest in any property or the proceeds thereof, is and shall hereby be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the DIP Liens or Adequate Protection Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by the Debtor, in favor of the DIP Lender or the Prepetition Secured Noteholder in accordance with the terms of the DIP Note Documents, the Interim Order, and this Final Order.

7.  **DIP Superpriority Claims.** Subject to the Carve-Out, effective immediately upon entry of the Interim Order, the DIP Lender has been granted, pursuant to sections 364(c)(1) and 364(e) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Case and any Successor Case thereof on account of the DIP Obligations, with priority over any and all administrative expenses of the kind that are specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364(c)(1), 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 1113, 1114, or any other provisions of the Bankruptcy Code and any other claims against the Debtor (the "DIP Superpriority Claims"). The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code. The DIP Superpriority Claims shall have recourse against the Debtor, but not against the Excluded Collateral.

8.      **DIP Roll-Up Amount.** Subject to paragraph 26 and from and after entry of the Final Order, the Prepetition Secured Indebtedness in an aggregate amount of the Roll-Up, shall be automatically deemed funded pursuant to the DIP Note Documents on a cashless basis and shall constitute a DIP Obligation, without any further action by the Debtor or any other party, and shall satisfy and discharge an equal amount of Prepetition Secured Indebtedness obligations as if a payment in such amount had been made under the Prepetition Secured Note Documents. The Roll-Up shall be deemed to be made by the DIP Lender and the outstanding aggregate amount of the Prepetition Secured Indebtedness held by the DIP Lender shall be automatically and irrevocably deemed reduced by the amount of the Roll-Up. In the event of a successful Challenge, the Court may fashion an appropriate remedy with respect to the Roll-Up.

9.      **Authorization to Use Proceeds of the DIP Facility and Cash Collateral; Budget Testing**.

(a)      (i) "Initial Budget" means the 13-week budget attached as **Exhibit 2** to the Interim Order and (ii) "Approved Budget" means the 13-week cash flow budget that is then in effect as set forth in paragraph 9(c) below, in the case of each of (i) and (ii), in form, substance and detail satisfactory to the DIP Lender in its sole discretion.

(b)      On or before Wednesday of each calendar week commencing on the first full week after the Petition Date (or if such date is not a Business Day, the next Business Day), the Debtor will provide a rolling 13-week cash flow forecast for the following 13-week period (the "Budget Update") to the DIP Lender and to the Committee (at the same time and in the same format), which shall be in form and substance acceptable to the DIP Lender. Within three (3) Business Days of the DIP Lender's receipt of the Budget Update (or on such more frequent days as may be requested by the DIP Lender), the Debtor and its advisors will attend a teleconference

with the DIP Lender to update it regarding compliance with the Budget Update and any other matters reasonably requested by the DIP Lender.

(c)     The Debtor must seek and obtain the written consent (email being sufficient) of the DIP Lender in its sole discretion to the Budget Update (the "Budget Approval"). If the Budget Update receives the written consent of the DIP Lender, then such Budget Update shall become the "Approved Budget" then in effect. In the event the Debtor does not obtain the consent of the DIP Lender with respect to the Budget Approval, the Approved Budget (which may be the Initial Budget) for the then-existing Testing Period (as defined below) shall apply for the immediately following Testing Period, and any Testing Period thereafter, unless the Bankruptcy Court orders alternative relief upon a motion filed by the Debtor or the Committee after notice and a hearing.  If the DIP Lender does not respond to the Debtor's request for DIP Lender's consent to a Budget Update within three (3) days, such Budget Update shall become an "Approved Budget."

(d)     Beginning on the second full calendar week following the Petition Date (the "First Variance Testing Date") on or before 5:00 p.m. prevailing Eastern Time on Wednesday of each week (each such date, a "Variance Testing Date"), the Debtor will provide to the DIP Lender and to the Committee (at the same time and in the same format) a variance report tested for the period following the first full two calendar weeks after entry of the Interim Order, and following the First Variance Testing Date, a variance report tested weekly with each subsequent calendar week thereafter added for a cumulative basis (e.g., full calendar weeks 1 through 2 following entry of the Interim Order was the first period, and each successive one week will be added as a cumulative test and each such period, a "Testing Period" and each such report, a "Variance Report"), in form and substance satisfactory to the DIP Lender setting forth in reasonable detail actual operating receipts and operating disbursements for the applicable Testing Period and all variances, in each case, on both an individual line item basis and an aggregate basis, as compared

to the projected amounts therefor set forth in the then applicable Approved Budget, in each case of the foregoing clauses, with a detailed explanation of any such variance.

(e)     As of the Variance Testing Date, the Debtor shall not permit the percentage variance for the actual total disbursements to be greater than 110% of what was projected for the total operating disbursements in the Initial Budget for the applicable Testing Period ("Variance Limit"); *provided, however*, that in any prior Testing Period that actual operating disbursements are less than the budgeted amount for such period ("Positive Budget Variance"), the Positive Budget Variance may be carried forward and added to the subsequent period. The covenant described in this paragraph 9(e) shall be referred to herein as the "Budget Covenant" and failure to comply with the Budget Covenant shall constitute an event of default (the "Budget Covenant Default"). A Budget Covenant Default will constitute an event of default under the DIP Note Documents.

10.     **Adequate Protection for the Prepetition Secured Noteholder.** In addition to all the existing security interests and liens granted to or for the benefit of the Prepetition Secured Noteholder in and with respect to their respective Prepetition Collateral, including the Cash Collateral, as adequate protection for, and to secure payment of an amount equal to, the Collateral Diminution,[4] resulting from, among other things, the imposition of the priming DIP Liens on the Prepetition Collateral, the Carve Out, the Debtor's use of the Prepetition Collateral (including Cash

---

[4]     For purposes of this Final Order, "Collateral Diminution" shall mean an amount equal to the diminution of the value from and after the Petition Date of the Prepetition Secured Noteholder's interests in the Prepetition Collateral upon which the Prepetition Secured Noteholder has a valid, perfected, enforceable and non-avoidable liens or security interests, resulting from the use, sale, or lease of the Prepetition Collateral, including Cash Collateral (whether in accordance with the terms and conditions of this Final Order or otherwise), or the imposition of the automatic stay. Notwithstanding anything to the contrary herein, a claim for Collateral Diminution, if any, shall be subject to notice and a hearing.

Collateral), and the imposition of the automatic stay, the Prepetition Secured Noteholder is hereby granted the following adequate protection to the extent of any Collateral Diminution:

(a)    **Adequate Protection Liens.** Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the Prepetition Secured Noteholder is hereby granted, to secure payment of an amount equal to the Collateral Diminution, a valid, binding, continuing, enforceable, fully-perfected first priority senior (except as otherwise provided in this paragraph 10(a)) security interest in and lien on (all such liens and security interests, the "Adequate Protection Liens") the DIP Collateral, subject and subordinated only to the Carve Out, the DIP Liens and the Permitted Prior Liens. For the avoidance of doubt, the Excluded Collateral shall not be subject to the Adequate Protection Liens.

(b)    **Adequate Protection Superpriority Claims.** Effective as of the Petition Date, and subject to the Carve-Out and the DIP Superpriority Claims, the Prepetition Secured Noteholder is hereby granted, in the amount of any Collateral Diminution arising pursuant to section 507(b) of the Bankruptcy Code an allowed administrative expense claim with priority over all other administrative claims in the Case (subject only to the Carve-Out and the DIP Superpriority Claims), including all claims of the kind specified under sections 503(b) and 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claims"), subject and subordinated only to the Carve-Out and the DIP Superpriority Claims. For the avoidance of doubt, the Adequate Protection Superpriority Claims shall not be payable from the Excluded Collateral.

11.    **Priority of Adequate Protection Liens and Adequate Protection Superpriority Claims**. Except as expressly provided in paragraph 10 of this Final Order and

subject to the Permitted Prior Liens, the Adequate Protection Liens and Adequate Protection Superpriority Claims granted to the Prepetition Secured Noteholder pursuant to paragraph 10 of this Final Order shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under section 364 of the Bankruptcy Code or otherwise.

12.    **Carve-Out**.

(a)    As used in this Final Order, the "Carve-Out" means the sum of:  (i) unpaid fees and expenses required to be paid by the Debtor to the Clerk of the Court or to the U.S. Trustee under 28 U.S.C. § 1930(a)(6) and all unpaid fees and expenses for services provided by any claims and noticing agent under the Clerk of the Court's delegation of duties permitted by 28 U.S.C. § 156(c); (ii) reasonable fees and expenses incurred by a trustee in any Successor Case under section 726(b) of the Bankruptcy Code in an aggregate cumulative amount not to exceed $10,000; (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals"), and by persons or firms retained by the Committee (the "Allowed Committee Fees" and, together with the Allowed Professional Fees, the "Estate Professional Fees") pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the DIP Lender of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice (the "Pre-Trigger Notice Fees"), subject to and not to exceed the Approved Budget and any limits by this Final Order; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount

not to exceed $75,000 incurred after the first business day following delivery by the DIP Lender of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").

(b)    For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender to the Debtor, its counsel, the U.S. Trustee, and counsel to the Committee (collectively, the "Carve-Out Notice Parties") which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(c)    Nothing contained in this Final Order shall be construed: (i) to exempt those persons seeking Estate Professional Fees who may receive interim compensation payments or reimbursement of expenses pursuant to any Court-approved procedure, from all provisions of bankruptcy law otherwise applicable, including, without limitation, any requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate final fee applications, and, if applicable, any subsequent order of this Court requiring that such payments be disgorged, or (ii) as consent to the allowance of any fees and expenses referred to above; and shall not affect any right of the DIP Lender to object to the reasonableness of such amounts or to object on any other basis.

(d)    The Debtor shall be authorized and permitted to establish an escrow account, to be held by a qualified institutional escrow agent to be agreed upon by the Debtor and the DIP Lender (the "Escrow Holder"), for the benefit of the Professional Persons and to fund by wire transfer such escrow on a weekly basis, in each case as provided herein and in the DIP Note Documents (including the DIP Note) (such account, to the extent of such deposited amounts, the

"Professional Fee Reserve Account"), in an amount equal to, but not to exceed, the professional fees and costs set forth in the Approved Budget line item for Professional Persons for such week. The Professional Fee Reserve Account shall be funded on a weekly basis in accordance with the Approved Budget and ending on the date upon which a Carve-Out Trigger Notice is delivered and notice of the amounts funded into the Professional Fee Reserve Account shall be delivered to counsel to the DIP Lender on a weekly basis. After the delivery of a Carve-Out Trigger Notice, notwithstanding anything herein to the contrary, the Debtor shall be authorized to deposit any cash on hand into the Professional Fee Reserve Account up to the amount of any remaining unpaid professional fees for each of the Professional Persons set forth in the Approved Budget for the period until delivery of the Carve-Out Trigger Notice plus an amount equal to the Post Carve-Out Trigger Notice Cap.

(e)    From the funds held in the Professional Fee Reserve Account, the Escrow Holder shall release to the Professional Persons solely such amounts as are payable from time to time pursuant to the Approved Budget and an applicable order of the Bankruptcy Court, including an order approving interim compensation procedures in the Case and any order granting interim or final fee applications for such Professional Persons (each, a "Fee Order"). For the avoidance of doubt, (a) in making payments from the Professional Fee Reserve Account, the Escrow Holder shall be entitled to rely upon written certifications of each Debtor Professional as to the amount each Professional Person is authorized pursuant to the Approved Budget and an applicable Fee Order of the Bankruptcy Court to be paid at such time from the Professional Fee Reserve Account; and (b) in no circumstances shall the Escrow Holder be obligated to pay any Professional Person other than from the funds held, from time to time, in the Professional Fee Reserve Account in accordance with the Approved Budget and an applicable Fee Order of the Bankruptcy Court. Funds held in the Professional Fee Reserve Account shall be applied to Allowed Professional Fees that

have been incurred following the Petition Date in accordance with procedures to be established in the Case, any Fee Order, and the Approved Budget. Payments and reimbursements for Allowed Professional Fees made to a Professional Person prior to delivery of the Carve-Out Trigger Notice shall reduce the amounts available to such Professional under section 12(a) of the Carve-Out, and neither the Professional Fee Reserve Account nor payments therefrom shall in any way increase the Carve-Out. All Allowed Professional Fees payable to Professional Persons shall be paid first from funds in the Professional Fee Reserve Account, if any, and, upon exhaustion thereof, from the Carve-Out (less any amounts previously funded into the Professional Fee Reserve Account). For the avoidance of doubt, the DIP Liens, Prepetition Liens, and Adequate Protection Liens shall attach to, and shall have a residual right to and lien on, any excess funds in the Professional Fee Reserve Account after satisfaction of the Carve-Out in respect of Allowed Professional Fees, which excess funds shall then be used to satisfy amounts due under the DIP Facility, the Prepetition Secured Indebtedness, and the Adequate Protection Payments, as applicable, in accordance with their rights and priorities as of the Petition Date and under this Final Order, in each case, until paid in full in cash.

(f)     For the avoidance of doubt, the delivery and effectiveness of a Carve-Out Trigger Notice shall not limit or impair the Escrow Holder's right and obligation to release funds in the Professional Fee Reserve Account to pay allowed Estate Professional Fees. Once all payments are made from the Professional Fee Reserve Account after the Court rules on final fee applications, any remaining amounts shall be either (a) returned to the Debtor prior to the conclusion of this Case or (b) to the extent purchased pursuant to a sale authorized by the Court, paid in accordance with the terms of that sale order.  Further, the DIP Lender shall not have any responsibility, liability, or obligation whatsoever to fund, direct payment or reimbursement of any fees or disbursements, or otherwise ensure that the Debtor funds the Professional Fee Account or

that the Professional Fee Account has funds equal to the aggregate amount of professional fees for each of the Professional Persons set forth in the Approved Budget for any applicable period.

(g)        Prior to or in accordance with the effective date of any plan, entry of any order dismissing the Case or converting the Case to a case under chapter 7 of the Bankruptcy Code, each professional that incurs Estate Professional Fees shall have an opportunity to seek allowance and payment of all Estate Professional Fees incurred by such professional at a final fee application hearing. In no way shall the Carve Out, the Professional Fees Reserve Account, or any Approved Budget be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtor or that may be allowed by the Court at any time (whether by interim order, final order, or otherwise).

13.        **Perfection of DIP Liens and Adequate Protection Liens**. The Interim Order and this Final Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, deed of trust, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens or to entitle the DIP Lender and the Prepetition Secured Noteholder to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender and the Prepetition Secured Noteholder are authorized, but not required, to file, as each deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, mortgages, notices and other

documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens. The DIP Lender and the Prepetition Secured Noteholder may each, in its discretion, file an electronic copy or photocopy of the Interim Order or this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office in addition to or in lieu of such financing statements, notices of lien or similar instruments.

14.    **Inspection Rights**. In addition to, and without limiting, whatever rights to access the Prepetition Secured Noteholder has under the Prepetition Secured Note Agreement, upon reasonable prior written notice (including via acknowledged electronic mail) during normal business hours, the Debtor shall permit representatives, agents and employees of the Prepetition Secured Noteholder and/or the DIP Lender to (i) have reasonable access to and inspect and copy the Debtor's books and records (subject to all privileges), including all records and files of the Debtor pertaining to the Prepetition Collateral and the DIP Collateral, (ii) have reasonable access to and inspect the Debtor's property and (iii) discuss the Debtor's affairs, finances, and condition with the Debtor's officers and advisors.

15.    **Cash Collateral Termination Events**. The Debtor's right to use the Cash Collateral pursuant to the Interim Order or this Final Order shall terminate (the date of such termination, the "Cash Collateral Termination Date") without further proceedings on the earliest to occur of any of the events set forth in clauses (a) through (bb) (collectively, the "Cash Collateral Termination Events"); *provided*, *however*, that (i) upon the occurrence of any Cash Collateral Termination Event that is capable of being cured, the Debtor shall provide written notice of such event to the DIP Lender and the Prepetition Secured Noteholder and counsel to the Committee simultaneously, and the Debtor shall have five (5) business days from delivery of such notice to

cure such Cash Collateral Termination Event, and (ii) upon the occurrence of any Cash Collateral Termination Event that is not capable of being cured, the Debtor shall provide written notice of such event to the DIP Lender and the Prepetition Secured Noteholder, counsel to the DIP Lender and the Prepetition Secured Noteholder, and counsel to the Committee simultaneously, and termination shall be effective immediately upon delivery of such notice:

(a) the Debtor's case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or a trustee under chapter 11 of the Bankruptcy Code or an examiner with expanded powers is appointed in the Debtor's case, or the Debtor seeks entry of an order accomplishing any of the foregoing, in each case without the prior written consent of the DIP Lender;

(b) the entry of an order in the Case granting relief from any stay or proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure against any material assets of the Debtor to which the fair market value of which exceeds $35,000;

(c) the entry of an order (i) surcharging any of the DIP Collateral under sections 105, 506(c), or any other section of the Bankruptcy Code, or (ii) allowing any administrative expense claim having priority over or ranking in parity with the DIP Superpriority Claims or the rights of the DIP Lender (subject to the Carve-Out and the Permitted Prior Liens);

(d) the entry of an order permitting the Debtor to obtain additional financing from a party other than the DIP Lender under section 364(d) of the Bankruptcy Code, except if such financing contemplates payment in full of the DIP Obligations, without the prior written consent of the DIP Lender;

(e)     the entry of an order by the Court terminating or modifying the exclusive right of the Debtor to file a chapter 11 plan pursuant to section 1121 of the Bankruptcy Code, without the prior written consent of the DIP Lender;

(f)     the Debtor commences any proceeding, or supports any other person's motion, seeking or otherwise consenting to the (i) disallowance in whole or in part of the DIP Obligations, (ii) invalidation, subordination, or other challenge to the validity and enforceability of the DIP Liens, or (iii) contest of any material provision of any DIP Note Document, or the Debtor files a motion, pleading, or proceeding which could reasonably be expected to result in a material impairment of the rights or interests of the DIP Lender (solely in its capacity as such);

(g)     the Debtor commences any proceeding, or supports any other person's motion, seeking or otherwise consenting to (i) the disallowance in whole or in part of the Prepetition Secured Indebtedness, (ii) the invalidation, subordination, or other challenge to the Prepetition Secured Indebtedness, Prepetition Liens, Adequate Protection Liens, or Adequate Protection Superpriority Claims, or (iii) any relief under section 506(c) of the Bankruptcy Code with respect to any Prepetition Collateral, including the Cash Collateral, or the Debtor files a motion, pleading, or proceeding which could reasonably be expected to result in a material impairment of the rights or interests of the Prepetition Secured Noteholder (solely in its capacity as such);

(h)     the Debtor files a plan of reorganization or liquidation that is not in form and substance satisfactory to the DIP Lender, it being understood that a plan will be satisfactory to the DIP Lender if it provides for the payment in full of the DIP Obligations pursuant to a signed commitment to lend from a from a financial institution with the financial wherewithal to consummate the transaction or another source of funding sufficient to allow for the indefeasible payment in cash of the full amount of the outstanding DIP Obligations;

(i)    the Debtor files a motion seeking to settle a controversy or claim on account of the DIP Collateral without the prior written consent of the DIP Lender;

(j)    the Debtor files a motion for the Court to approve a sale of the DIP Collateral pursuant to section 363 of the Bankruptcy Code which proposed sale is not reasonably acceptable to the DIP Lender;

(k)    the Debtor shall fail to execute and deliver to the DIP Lender any agreement, financing statement, trademark filing, copyright filing, notices of lien or similar instruments or other documents that the DIP Lender may reasonably request from time to time to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens created in favor of the DIP Lender;

(l)    the Debtor fails to provide the DIP Lender with draft copies of all motions, notices, statements, schedules, applications, reports, and other papers the Debtor intends to file with the Court in connection with any plan, sale process, or any other material filing within a reasonable period of time prior to the date the Debtor intends to file any of the foregoing, and fails to consult in advance in good faith with the DIP Lender regarding the form and substance of any such proposed filing;

(m)    the imposition of any material award, claim, fine, penalty, or other monetary judgment by any governmental entity, including the Court, against the Debtor that would not be dischargeable pursuant to the Bankruptcy Code, any order confirming a plan of reorganization, or any other order of the Court;

(n)    the bringing of a motion or the taking of any action in the Case by the Debtor, or the entry of a judgment or order by the Court, that in any way seeks to challenge, prevent, or otherwise interfere with the DIP Lender's right to credit bid all or any portion of the DIP Obligations against the DIP Collateral and the Prepetition Secured Noteholder's right to credit bid

all or any portion of the Prepetition Secured Indebtedness at any sale thereof conducted under the provisions of the Bankruptcy Code, including under section 363 of the Bankruptcy Code, section 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or under any similar provisions of applicable law;

(o)     an order is entered (i) granting another claim or lien *pari passu* with or senior to the Prepetition Liens, Adequate Protection Liens, or Adequate Protection Superpriority Claims, under this Final Order or (ii) reversing, staying for a period in excess of five (5) business days, vacating or otherwise amending, supplementing, or modifying this Final Order in a manner not acceptable to the DIP Lender;

(p)     the entry of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the Prepetition Secured Noteholder with respect to the Prepetition Collateral without the prior written consent of the Prepetition Secured Noteholder;

(q)     the reversal or modification of the Roll-Up by the Bankruptcy Court without the consent of the Prepetition Secured Noteholder or the Bankruptcy Court does not approve the Roll-Up;

(r)     the effective date of any confirmed chapter 11 plan for the Debtor;

(s)     the date of dismissal of the Case;

(t)     the entry of a subsequent order of the Court (i) terminating the use of Cash Collateral or (ii) authorizing the use of Cash Collateral by any person other than the Debtor;

(u)     the failure by the Debtor to make any payment required pursuant to the Interim Order or this Final Order when due;

(v)     the failure by the Debtor to deliver to the DIP Lender any of the documents or other information required to be delivered pursuant to the Interim Order or the Final Order when due, or any such documents or other information shall contain a material misrepresentation;

(w)     the occurrence of any Budget Covenant Default;

(x)     failure of the Debtor to use the proceeds of the Loans as set forth in and in compliance with the Approved Budget (subject to variances permitted hereunder) and the Interim Order and this Final Order;

(y)     the failure of the Debtor to observe or perform any of the material terms or material provisions contained in the Interim Order this Final Order or in the DIP Note Documents;

(z)     the designation by the Debtor of a successful bidder for all or substantially all of its assets to a person or entity other than the DIP Lender or its designee;

(aa)     the entry of an order of this Court approving the terms of any debtor in possession financing for the Debtor other than the DIP Facility; or

(bb)     the Debtor shall fail to meet any of the Milestones (as defined herein), unless such Milestone is waived or extended by the DIP Lender in writing

16.     **DIP Termination Event.** The occurrence and continuance of any "Event of Default" (as defined in the DIP Note Documents) under the DIP Note Documents shall constitute a "DIP Termination Event" under this Final Order (the date upon which such DIP Termination Event occurs, the "DIP Termination Date") unless waived in writing by the DIP Lender. On the DIP Termination Date, (a) the maturity of the DIP Facility shall be accelerated to the DIP Termination Date (provided that payments to the DIP Facility shall remain subject to the payment subordination provisions set forth herein with respect to the Prepetition Secured Noteholder) and (b) subject to the Carve-Out, the Debtor's right to use the Cash Collateral pursuant to this Final Order shall automatically terminate.

17.     **Milestones**. As a condition to the DIP Facility and the use of Cash Collateral, the Debtor has agreed to the following milestones (the "Milestones"). For the avoidance of doubt, unless waived or modified by the DIP Lender, the failure of the Debtor to meet any Milestone by the applicable specified deadline set forth therefor shall constitute an Event of Default under the DIP Note Documents and a DIP Termination Event.

(a)     no later than thirty-four (34) days after the Petition Date, the Debtor shall obtain entry by the Court of the (i) Final Order and (ii) an order approving the Bidding Procedures, each in form and substance acceptable to the DIP Lender; and

(b)     no later than sixty-three (63) days after the Petition Date, the Debtor shall have obtained from the Court an order approving the sale of substantially all of the Debtor's assets and/or equity, in form and substance acceptable to the DIP Lender.

18.     **Remedies After a DIP Termination Date**. The DIP Lender shall deliver notice of a DIP Termination Event, in each case, to counsel for the Debtor, the U.S. Trustee, and the Committee. Following notice of a DIP Termination Event, any party in interest may file a motion with the Court and request an emergency hearing on the same (the "Emergency Default Hearing"). The Court shall conduct the Emergency Default Hearing within the Remedies Notice Period (as defined below); *provided*, *however*, that if the Court is unable to schedule the Emergency Default Hearing within the Remedies Notice Period, the Remedies Notice Period shall be automatically tolled until the date on which the Court is first able to conduct such hearing. Nothing herein shall alter the rights or burden of proof with respect to any request by the Debtor or other party in interest to, after the Remedies Notice Period, re-impose or continue the automatic stay under section 362(a) of the Bankruptcy Code, use Cash Collateral, or to obtain any other injunctive relief. The Debtor hereby waives any right to seek relief, including without limitation under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights

and remedies of the DIP Lender (in its capacities as DIP Lender and Prepetition Secured Noteholder) set forth in the Interim Order or this Final Order; *provided*, that the foregoing does not modify the Remedies Notice Period. After five (5) business days following the delivery of a written notice of the occurrence of and during the continuance of a DIP Termination Event or such later time at the Court may order, during such five (5) business day period (the "Remedies Notice Period"), and absent authority to use Cash Collateral without the consent of the Prepetition Secured Noteholder or an order of the Court, the automatic stay shall be deemed automatically lifted with respect to the Prepetition Collateral, the Cash Collateral, and the DIP Collateral and the DIP Lender (in its capacities as DIP Lender and Prepetition Secured Noteholder) shall have the right to exercise any other remedies customary for secured lenders, including set-off and foreclosure, in connection with the Prepetition Secured Note Documents and the DIP Note Documents, respectively. In addition, after the DIP Lender delivers notice of a DIP Termination Event, but prior to the Emergency Default Hearing, except as may be otherwise ordered by the Court, the Debtor shall not use any Cash Collateral to pay any expenses except those which are necessary to maximize the value of the Debtor's estate (not to exceed the Approved Budget under any circumstances absent the consent of the DIP Lender). Notwithstanding anything in this paragraph to the contrary, after notice and hearing, the Court may order such relief as it determines is appropriate following a DIP Termination Event. Any delay or failure of the Prepetition Secured Noteholder to exercise rights under the Prepetition Secured Note Documents or the DIP Lender to exercise rights under the DIP Note Documents, the Interim Order, or this Final Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise.

19.     **Wind-Down Account.** Notwithstanding anything to the contrary herein, following the closing of a sale of substantially all of the Debtor's assets (which sale shall be in form and substance reasonably acceptable to the DIP Lender), the Debtor is authorized and

directed, in consultation with the Committee, to direct funds to a segregated designated trust account (the "Wind-Down Account") an amount equal to (i) budgeted and accrued but unpaid expenses and (ii) the Post-Carve Out Trigger Notice Cap (the "Wind-Down Budget"). Except for permitting the funding of the Wind-Down Account in an amount equal to the Wind-Down Budget from the Prepetition Collateral or the DIP Collateral, as applicable, neither the Prepetition Secured Noteholder nor the DIP Lender shall have any responsibility, liability, or obligation whatsoever to fund, direct payment or reimbursement of any fees or disbursements, or otherwise ensure that the Debtor funds the Wind-Down Account or that the Wind-Down Account has funds equal to the aggregate amount set forth in the Wind-Down Budget. Any excess amounts in the Wind-Down Account after payment of all expenses in the Wind-Down Budget shall be subject in all respects to the Permitted Prior Liens, Prepetition Liens, DIP Liens, and the Adequate Protection Liens, and to the extent such excess amounts in the Wind-Down Account were purchased in accordance with a sale authorized by the Court, shall be paid by the Debtor in accordance with the terms of that sale.

20.     **Payments Free and Clear.** Any and all payments or proceeds remitted to the Prepetition Secured Noteholder or to the DIP Lender pursuant to the provisions of the Interim Order, this Final Order or any subsequent order of this Court shall be irrevocable (subject to paragraph 26 of this Final Order), received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through, or on behalf of the Debtor) or 552(b) of the Bankruptcy Code.

21.     **Limitation on Charging Expenses Against Collateral**. All rights to surcharge the interests of the Prepetition Secured Noteholder in any Prepetition Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law shall be

and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtor and all parties in interest in the Case.

22.    **Modification of Automatic Stay**. The Debtor is authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Final Order and the transactions contemplated hereby, including the (a) granting of the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Lender may reasonably request to assure the perfection and priority of the DIP Liens and the DIP Superpriority Claims, and (b) Debtor incurring all liability and obligations, including all the DIP Obligations, to the DIP Lender as contemplated under this Final Order and the DIP Note Documents, and to enter into and perform under the DIP Note Documents and any and all other instruments, certificates, agreements, and documents that may be reasonably required, necessary, or prudent for the performance by the Debtor under the DIP Note Documents and any transactions contemplated therein or in this Final Order, in each case in accordance herewith or therewith. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by the Interim Order and this Final Order.

23.    **Survival of Final Order**. The provisions of this Final Order shall be binding upon any trustee appointed during the Case or any Successor Case, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Case to a chapter 7 case or any other Successor Case, dismissing the Case under section 1112 of the Bankruptcy Code or otherwise, or confirming or consummating any plan(s) of reorganization or liquidation. The terms and provisions of this Final Order, as well as the priorities in payments, liens, and security interests granted pursuant to this Final Order shall continue notwithstanding any conversion of the Case to a chapter 7 case or any other Successor Case under the Bankruptcy Code, dismissal of the

Case or confirmation or consummation of any plan(s) of reorganization. The adequate protection payments made pursuant to the Interim Order or this Final Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Case or any Successor Case (other than a defense that the payment has actually been made). The terms of this Final Order shall be valid and binding upon the Debtor, all creditors of the Debtor and all other parties in interest from and after the entry of this Final Order by this Court.

24. **No Liability to Third Parties**. With respect to the use of Cash Collateral, the entry into the DIP Facility or the providing of the DIP Loans, or any approval or disapproval of the Budget including, without limitation, any permitted variance allowed pursuant to paragraph 9 of this Final Order, the DIP Lender shall not: (i) be deemed to be in "control" of the operations of the Debtor; (ii) owe any fiduciary duty to the Debtor, its creditors, shareholders or estate; or (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtor (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act of 1980 or any similar federal or state statute).

25. **Good Faith under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order**. The DIP Lender and the Prepetition Secured Noteholder have acted in good faith in connection with the DIP Facility, the DIP Note Documents, the Interim Order, and this Final Order and their reliance on this Final Order is in good faith. Based on the findings set forth in this Final Order and the record made during the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, the DIP Lender and the Prepetition Secured Noteholder are entitled to the protections provided in section 364(e) of the Bankruptcy Code, the Interim Order, this Final Order and the DIP Note Documents. If any or all of the provisions of this Final Order are hereafter reversed or modified, such reversal or modification

shall not affect the validity, priority, or enforceability of the DIP Obligations, the DIP Liens, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, the Prepetition Liens, or the Prepetition Secured Indebtedness. Notwithstanding any such reversal or modification of this Final Order, any DIP Obligations, DIP Liens, or Adequate Protection Liens incurred by the Debtor to the DIP Lender or the Prepetition Secured Noteholder, as the case may be, prior to the actual receipt of written notice by the DIP Lender and the Prepetition Secured Noteholder of the effective date of such reversal or modification shall be governed in all respects by the original provisions of this Final Order.

26.    **Reservation of Certain Third-Party Rights and Bar of Challenge and Claims**.

(a)    The Debtor's admissions, stipulations and releases contained in the Interim Order and this Final Order shall be binding upon the Debtor for all purposes and shall be binding upon all other parties in interest, including the Committee and any chapter 7 trustee, for all purposes unless, and solely to the extent that, (i) a party in interest that has sought and obtained standing and the requisite authority to commence a Challenge (as defined below) (other than the Debtor, as to which any Challenge is irrevocably waived and relinquished) has properly filed appropriate pleadings and commenced the appropriate proceeding required under Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules, seeking to avoid, object to or otherwise challenge the Debtor's admissions, stipulations and releases including (x) challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Indebtedness and/or the Prepetition Liens, or (y) otherwise asserting or prosecuting any action for preference, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests and defenses against the Prepetition Secured Noteholder on behalf of the Debtor's estate (each, a "Challenge,"

and collectively, "Challenges") by the date that is the earlier of (x) one Business Day before the hearing approving the sale of substantially all of the Debtor's assets and (y) seventy-five (75) calendar days from the entry of the Interim Order, (the "Challenge Deadline") and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.

(b)      If no such Challenge is properly filed as of such dates or the plaintiff's claims are dismissed or denied by final and unappealable order in any such proceeding or matter, then: (i) the Debtor's admissions, stipulations and releases contained in the Interim Order and this Final Order shall be binding on all parties in interest, including the Committee; (ii) the obligations of the Debtor under the Prepetition Secured Note Documents shall constitute allowed claims for all purposes in the Case or any Successor Case; (iii) the Prepetition Secured Noteholder's security interests in and liens upon the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, first priority security interests and liens, subject only to Permitted Prior Liens, and not subject to recharacterization, subordination or otherwise avoidable; and (iv) the Prepetition Secured Indebtedness and the Prepetition Liens on the Prepetition Collateral and the Collateral shall not be subject to any other or further challenge by the Committee or any other party in interest seeking to exercise the rights of the Debtor's estate, including, without limitation, any successor thereto.

(c)      If a Challenge is properly filed as of the Challenge Deadline, the Debtor's admissions, stipulations and releases contained in the Interim Order and this Final Order shall nonetheless remain binding and preclusive on all parties in interest, including the Committee, except to the extent that such admissions, stipulations and releases were expressly challenged in such Challenge; *provided*, that the timely filing of a motion seeking standing to file a Challenge

before the Challenge Deadline, which attaches a draft complaint setting forth the legal and factual bases of the proposed Challenge, shall toll the Challenge Deadline only as to the party that timely filed such standing motion until such motion is resolved or adjudicated by the Court. If a chapter 7 trustee or a chapter 11 trustee is appointed before the Challenge Deadline, then the Challenge Deadline with respect to such trustee only, shall be the later of (i) the Challenge Deadline and (ii) the date that is twenty (20) calendar days after the date on which such trustee is appointed or elected. The Challenge Deadline may be extended by (i) the written consent of the Prepetition Secured Lender (email being sufficient) in its sole discretion or (ii) order of the Court upon a motion filed by a party in interest prior to the expiration of the Challenge Period, for good cause shown.

(d)    Nothing contained in the Interim Order or this Final Order shall be deemed to grant standing or authority to the Committee or any other party to commence a Challenge; provided that the Prepetition Secured Noteholder (including any of its affiliates and related parties) and the Debtor agree not to object to the standing of the Committee to raise any issues on behalf of the estates of any Debtor that is a limited liability company on the basis that the Committee cannot have standing to raise such issues under applicable non-bankruptcy law because such Debtor entity is a limited liability company.

27.    **Restrictions on Use of Prepetition Collateral, DIP Collateral, Cash Collateral and Carve-Out**. Except as otherwise permitted in this Final Order and the Approved Budget, the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve-Out may not be used, directly or indirectly, by any of the Debtor, the Committee, or any trustee or other estate representative appointed in the Case (or any Successor Case) or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith) in connection with (a) preventing, hindering, or delaying any of the DIP Lender's and/or Prepetition Secured Noteholder's enforcement or realization upon any of the DIP

Collateral or Prepetition Collateral; (b) using or seeking to use Cash Collateral without the permission of the Prepetition Secured Noteholder or selling or otherwise disposing of DIP Collateral without the consent of the DIP Lender or as permitted by the DIP Note Documents; (c) using or seeking to use any insurance proceeds constituting DIP Collateral or Prepetition Collateral without the consent of the DIP Lender or the Prepetition Secured Noteholder; (d) seeking to amend or modify any of the rights granted to the DIP Lender or the Prepetition Secured Noteholder under the Interim Order, this Final Order, the DIP Note Documents, or the Prepetition Secured Note Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; (e) litigating, objecting to, challenging or contesting in any manner in any way the DIP Liens, DIP Obligations, DIP Superpriority Claims, the Prepetition Secured Indebtedness, the Prepetition Liens, DIP Collateral (including Cash Collateral) or, as the case may be, the Prepetition Collateral, or any other claims held by or on behalf of any of the DIP Lender or the Prepetition Secured Noteholder, respectively; (f) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, Avoidance Actions or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Lender, Prepetition Secured Noteholder, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; (g) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Secured Indebtedness, the Prepetition Liens, or any other liens or interests of any of the DIP Lender or the Prepetition Secured Noteholder; or (h) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations or the Prepetition Secured Indebtedness; *provided*, *however*, that the Carve-Out and such collateral proceeds and loans under the DIP Note Documents may be used for allowed fees and expenses, in an amount not to exceed $55,000 in the aggregate (the "Investigation Budget

Amount"), incurred solely by the Committee or chapter 7 or 11 trustee appointed or elected in the Case, in investigating (but not to litigate, contest, initiate, assert, join, commence, support or prosecute any claim, cause of action, adversary proceeding, or other litigation) the validity, enforceability, perfection, priority or extent of the Prepetition Liens within the earlier of (x) one Business Day before the hearing approving the sale of substantially all of the Debtor's assets and (y) seventy-five (75) calendar days after entry of the Interim Order. For the avoidance of doubt, no portion of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out may be used, directly or indirectly, by the Debtor or the Committee (if appointed), or any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, any creditors, or parties in interest to investigate or Challenge any of the Prepetition Liens or Prepetition Secured Indebtedness as they relate to the DIP Lender.

28.     **Enforceability; Waiver of Any Applicable Stay**. This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

29.     **Proofs of Claim**. Neither the Prepetition Secured Noteholder nor the DIP Lender will be required to file proofs of claim in the Case or any Successor Case, and the Debtor's stipulations herein and this Final Order shall be deemed to constitute a timely filed proof of claim against the Debtor. Notwithstanding the foregoing, the Prepetition Secured Noteholder and the DIP Lender are hereby authorized and entitled, in its sole discretion, but not required, to file (and amend

and/or supplement, as it sees fit) a master proof of claim for any claims, as applicable, arising from the Prepetition Secured Note Documents or DIP Note Documents.

30.    **Section 552(b) of the Bankruptcy Code**. The Prepetition Secured Noteholder shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Noteholder with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral.

31.    **No Marshaling**. Neither of the Prepetition Secured Noteholder or the DIP Lender shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or the DIP Collateral except as expressly provided herein, as applicable; *provided,* that, prior to the DIP Lender or the Prepetition Secured Noteholder seeking payment or satisfaction of any DIP Claims, DIP Liens, Adequate Protection Liens or Adequate Protection Claims from DIP Collateral that was previously unencumbered as of the Petition Date (the "Last-Out Collateral"), the DIP Lender and the Prepetition Secured Noteholder shall first look to all other DIP Collateral and Prepetition Collateral (other than the Last Out Collateral), as applicable.

32.    **Right to Credit Bid.** Subject to section 363(k) of the Bankruptcy Code, (i) the DIP Lender may credit bid all or any portion of its claims, including, without limitation, the DIP Obligations and the DIP Superpriority Claims and (ii) the Prepetition Secured Noteholder may credit bid all or any portion of its claims, including, without limitation, the Prepetition Secured Indebtedness, in connection with any proposed sale of any, all, or substantially all of the Debtor's assets, whether occurring pursuant to section 363 of the Bankruptcy Code or included as part of a reorganization plan under section 1123 of the Bankruptcy Code, including a plan subject to confirmation under section 1129(b)(2)(A)(ii) of the Bankruptcy Code, or a sale or disposition by a

chapter 7 trustee for the Debtor under section 725 of the Bankruptcy Code. In connection with any such credit bid, the Debtor shall provide for the assignment of the right to purchase the acquired assets to one or more of the DIP Lender's sub-agents or a newly formed acquisition vehicle. For the avoidance of doubt, nothing in this Final Order shall be construed to limit, impair, or otherwise affect any party's rights under section 363(k) of the Bankruptcy Code, and all such rights are hereby expressly preserved.

33.    **DIP Lender Professional Fees**. Professionals for the DIP Lender (Clifford Chance US LLP and Young Conaway Stargatt & Taylor, LLP) (the "DIP Lender's Professionals," and each a "DIP Lender's Professional") shall be entitled to reimbursement of the reasonable fees and expenses of their counsel (the "Lender's Expenses"); *provided*, *however*, that copies of all invoices reflecting the Lender's Expenses shall be served by email on the Debtor, the U.S. Trustee, and counsel to the Committee (collectively the "Fee Notice Parties"), who shall have ten (10) calendar days to review and to assert any objections thereto.  Such invoices shall include a general description of the nature of the matters worked on (but shall not be required to include individual time entries), a list of professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed and, with respect to the invoices of law firms, the year of law school graduation for each attorney; *provided*, *however*, that the U.S. Trustee and the Committee reserves the right to seek copies of invoices containing the detailed time entries of any professional. The U.S. Trustee and the Committee reserve rights to seek to obtain unredacted copies of such invoices. Any expenses sought to be reimbursed shall be specified and broken out by type of expense.  The provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.  If no objection to the payment of the Lender's Expenses is made in writing by the Fee Notice Parties within ten (10) calendar days after delivery of such invoices, then, without further order of, or

application to, the Court or notice to any other party, such Lender's Expenses shall be promptly paid by the Debtor. If an objection is made by any of the Fee Notice Parties within the ten-day objection period to the payment of the Lender's Expenses, then the disputed portion of such Lender's Expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtor. Upon the maturity of the DIP Facility, if the DIP Lender is not the successful bidder for the Debtor's assets or the sale of the assets to the DIP Lender is not consummated, the Debtor shall promptly pay in full in cash all such invoiced fees and expenses if no objection to the payment of the Lender's Expenses is made in writing by the Fee Notice Parties within ten (10) calendar days after delivery of such invoice.

34.    **Indemnification**. The DIP Lender (and its affiliates and respective officers, directors, employees, advisors, and agents, solely in such capacity) (each such person, an "Indemnitee") will have no liability for, and will be indemnified and held harmless against, any losses, claims, damages, liabilities or expenses incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof, except to the extent they are found by a final, non-appealable judgment of a court of competent jurisdiction to arise from the gross negligence, bad faith or willful misconduct of the relevant Indemnitee (or any of its affiliates or any of its or its respective officers, directors, employees, advisors or agents). Such indemnity shall not be available to the extent arising (a) from a material breach of any obligation of such Indemnitee under the DIP Note Documents or (b) out of any loss, claim, damage, liability or expense that does not involve an act or omission of the Debtor and that is brought by an Indemnitee against another Indemnitee (other than claims against an Indemnitee in its capacity or in fulfilling its role as DIP Lender or any similar role under the DIP Note Documents). Notwithstanding the foregoing, the Debtor shall not indemnify any Indemnitee for any costs, expenses, losses, claims, damages, or

liabilities incurred in connection with a successful Challenge brought in accordance with paragraph 26 hereof.

35.     **Headings**. The headings in this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

36.     **Retention of Jurisdiction**. The Court has and will retain jurisdiction to enforce this Final Order.

**Dated: July 9th, 2026**
**Wilmington, Delaware**

**BRENDAN L. SHANNON**
**UNITED STATES BANKRUPTCY JUDGE**